**Fernando PADILLA, Appellant**

v.

**STATE of Texas, Appellee.**

**No. 11–06–00230–CR.**

Court of Appeals of Texas, Eastland.

April 17, 2008.

Discretionary Review Refused Aug. 20, 2008.

---

David G. Rogers, Fivecoat & Rogers, P.L.L.C., Midland, for appellant.

Eric Kalenak, Assistant, Teresa J. Clingman, District Attorney, Midland County District Attorney's Office, Midland, for appellee.

Panel consists of: WRIGHT, C.J., McCALL, J., and STRANGE, J.

## OPINION

RICK STRANGE, Justice.

Fernando Padilla was indicted for aggravated assault with a deadly weapon, for aggravated assault causing serious bodily

injury, and for burglary of a habitation. The jury convicted Padilla of aggravated assault with a deadly weapon and of burglary of a habitation. It assessed his punishment at ten years confinement and a $2,500 fine for the aggravated assault conviction and fifteen years confinement and a $2,500 fine for the burglary conviction. We affirm.

## I. Background Facts

Padilla and the victim were involved in a relationship for two years. Their relationship ended prior to the assault, although Padilla continued leaving notes on her door complaining of her new boyfriend and expressing his love for her. The victim testified that, on the night of the assault, she went out with a couple of friends and returned home around 10:00 p.m. When she got home, she made some phone calls, took a shower, and then fell asleep. She woke up suddenly and saw Padilla standing over her bed. He started punching her and said, "I told you I was going to kill you, and if I couldn't have you, nobody would." The victim tried to defend herself by pushing and kicking Padilla. She also attempted to reach for the phone, but Padilla hit her on the head with a Baby Jesus statue that was by her bed.

Padilla pulled the victim off her bed when he saw that she was bleeding. She asked him to take her to the hospital. He refused, saying that his friends had dropped him off. He did take her to the bathroom and tried to wash the blood off her head. He also tried to clean the wall and floor and to wash her sheets. The victim again asked Padilla to help her, but he once more refused saying that he would go to prison. Padilla spent the remainder of the night at the victim's house.

The victim's boss, Audrey Glen Wigginton, came to her house the following morning looking for her because she was not answering her phone. She answered the door and asked him to call 911. Wigginton testified that she had crawled to the door and was bleeding. He called 911. He also entered her house and saw Padilla inside. Padilla approached him and said, "I didn't do that." Wigginton told Padilla that he had called 911, and Padilla fled. The victim suffered bruising and swelling on the left side of her face, a fracture of the orbit of the left eye socket, a cracked cheekbone and nasal bone, a laceration on her scalp, and superficial scratches on her shoulders.

## II. Issues on Appeal

Padilla raises seven issues on appeal. In three issues, he asserts that the evidence was legally and factually insufficient to sustain the jury's guilty verdicts or to overcome his defensive theory. Padilla asserts in the next three issues that the trial court erred by admitting evidence of an extraneous offense, by failing to admit evidence of the victim's pending DWI, and by allowing the testimony of his cell-mate. Finally, Padilla asserts that the trial court erred when it removed a reasonable doubt instruction from the jury charge.

## III. Analysis

A. Legal and Factual Sufficiency of the Evidence.

1. Standard of Review.

To determine if the evidence is legally sufficient, we review all of the evidence in the light most favorable to the verdict and determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); Jackson v. State, 17 S.W.3d 664, 667 (Tex. Crim.App.2000). The factfinder is the sole judge of the credibility of the witnesses and the weight to be given their testimony.

*Adelman v. State,* 828 S.W.2d 418, 421 (Tex.Crim.App.1992). The factfinder may choose to believe or disbelieve all or any part of any witness's testimony. *Sharp v. State,* 707 S.W.2d 611, 614 (Tex.Crim.App. 1986).

To determine if the evidence is factually sufficient, the appellate court reviews all of the evidence in a neutral light. *Watson v. State,* 204 S.W.3d 404, 414 (Tex.Crim.App. 2006). Then, the reviewing court determines whether the evidence supporting the verdict is so weak that the verdict is clearly wrong and manifestly unjust or whether the verdict is against the great weight and preponderance of the conflicting evidence. *Id.* at 414–15.

### 2. *Aggravated Assault with a Deadly Weapon.*

█ A person commits an aggravated assault if he intentionally, knowingly, or recklessly causes bodily injury to another and if he uses or exhibits a deadly weapon during the commission of the assault. Tex. Penal Code Ann. § 22.02(a)(2) (Vernon 2006). A deadly weapon can be anything that in the manner of its use or intended use is capable of causing death or serious bodily injury. Tex. Penal Code Ann. § 1.07(a)(17)(B) (Vernon Supp.2007). Serious bodily injury is defined as "bodily injury that creates a substantial risk of death or that causes death, serious permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ." Tex. Penal Code Ann. § 1.07(a)(46) (Vernon Supp.2007). In this case, the State alleged that the deadly weapon was a statue of Baby Jesus. We must determine if there is sufficient evidence to show that Padilla used or intended to use the statue in such a way that it was capable of causing death or serious bodily injury. *Alvarez v. State,* 566 S.W.2d 612, 614 (Tex.Crim.App.1978).

Padilla argues that the evidence failed to establish that he used the statue to strike the victim because she changed her story several times while his testimony was clear and because of the lack of forensic evidence connecting him to the statue. On direct, the victim testified that Padilla hit her with a Baby Jesus statue that was beside her bed. Officer Richard Candelaria interviewed the victim at the emergency room. She told him that Padilla had used a weapon. Officer Candelaria also testified that an ID tech found a weapon in her bedroom. Trial testimony revealed that the statue had blood on both the inside and outside.

On cross-examination, the victim testified that she remembered giving a statement to Officer Candelaria the next day in the hospital. She did not remember telling him that Padilla hit her with the statue as soon as she woke up. Counsel showed her a copy of the statement. She read it, reiterated that she did not remember saying that, and conceded that her trial testimony differed from her statement. Padilla then impeached the victim with her prior testimony from a bond hearing where she testified that she did not remember Padilla picking anything up and hitting her with it. She also testified at the hearing, "I don't remember reaching for the phone. I remember—I don't know—he hit me with a statue or something that was there." Finally, she agreed that it was difficult for her to remember everything that happened that night.

Padilla testified that the victim attacked him first. He tried to calm her down and, in the process, hit her in the face a few times with his fist. He specifically denied hitting her with a statue. He testified that the statue was broken when it fell off the nightstand and hit him. He claimed that the victim was injured when they fell off

the bed and she hit her head on the headboard.

Applying the applicable standards of review, we find that the evidence is legally and factually sufficient to show that Padilla committed aggravated assault with a deadly weapon. It is undisputed that Padilla injured the victim, that a statue was broken during their struggle, and that this statue had blood on it and in it when the police arrived. The question is whether Padilla injured her with his fists alone or if he also used the statue. Padilla correctly points out that the victim's memory was not perfect and that her statements were not always completely consistent. Whether to believe her trial testimony is ultimately a credibility determination. If believed, the victim's testimony alone is sufficient to support a guilty verdict. A rational juror could also consider the evidence corroborating her testimony and determine that Padilla was guilty of aggravated assault beyond a reasonable doubt. We overrule Padilla's first issue.

### 3. Burglary of a Habitation.

■ Padilla argues that the evidence is legally and factually insufficient to support a guilty verdict for burglary of a habitation because he believed that he had the victim's consent to enter her house. A person commits a burglary of a habitation if, without the effective consent of the owner, he either enters a habitation with the intent to commit a felony, theft, or an assault or enters a habitation and actually commits a felony, theft, or an assault. TEX. PENAL CODE ANN. § 30.02(a) (Vernon 2003).

Padilla testified that he moved in with the victim while they were dating in 2004 and that the victim kicked him out in February 2005. This happened several times over the course of their relationship. Padilla testified that in 2006 they were still seeing each other but that he was not living with her. He also testified that he had snuck into her house through the window several times and that, on other occasions, the victim would leave the back door open for him. Padilla testified that, on the day of the incident, the victim called him and said that she wanted to see him. Later that night, he drove past her house, but she was not home. He parked at the Walgreens' parking lot and walked to her house. He jumped the back fence and entered the house through a window.

On cross-examination, the State impeached Padilla with a criminal trespass charge. Padilla acknowledged that he was arrested on February 9, 2005, for criminal trespass of the victim's home but said that the criminal trespass charges were subsequently dismissed. He also conceded that the victim would not give him a key to her house. He denied knowing that she was seeing someone else but admitted that, around the time of the assault, he left several notes on her door complaining of her boyfriend, expressing his continued love for her, and warning her not to "[f]—up." Officer Candelaria interviewed Padilla and took a recorded statement. This statement was played for the jury. During the interview, Padilla told Officer Candelaria that he did not have permission to be in her house, that he did not know why he went there, and that he was drunk that night.

The victim testified that she and Padilla were intimate but that they did not ever live together. He did not have a key to her house, and he only stayed there a couple of nights when he was too drunk to go home. She broke off the relationship in March 2006. The victim stated that she did not know how Padilla got into her house the night she was assaulted because the doors were locked. She denied ever letting him into her house in the middle of the night.

The evidence is legally and factually sufficient to show that Padilla did not have the victim's consent to enter her home that night. The victim denied giving him consent. Padilla told the police that he did not have permission to enter the house and that he parked a block away from her house rather than at it. At trial, he admitted that he did not enter through an open door but through a window. Just as the jury could reasonably accept the victim's version of the assault over his, it could likewise accept her consent testimony over his. We overrule Padilla's second issue.

### 4. Self-defense.

Padilla next contends that the State did not overcome his defensive theory of self-defense. A person is justified in using force against another when the actor reasonably believes that the force is immediately necessary to protect the actor against the other's use or attempted use of unlawful force. TEX. PENAL CODE ANN. § 9.31(a) (Vernon Supp.2007). The defendant has the initial burden to produce some evidence to support a self-defense claim. The State then has the burden of persuasion to disprove it. *Zuliani v. State,* 97 S.W.3d 589, 594–95 (Tex.Crim. App.2003).

Viewing all of the evidence in the light most favorable to the verdict, it is legally sufficient. The victim testified that Padilla was the aggressor and that he assaulted her. A rational juror could have believed her testimony and rejected Padilla's self-defense claim.

A factual sufficiency review of the jury's decision is more nuanced because of the shifting burdens. Padilla argues that the State's burden is to disprove his defense beyond a reasonable doubt. The court in *Zuliani* held that the defendant bears the full burden of proof on an affirmative defense under TEX. PENAL CODE ANN. § 2.04 (Vernon 2003) and that the defendant bears the burden of production and the State the burden of persuasion on a defense under TEX. PENAL CODE ANN. § 2.03 (Vernon 2003). *Zuliani,* 97 S.W.3d at 594 n. 5.

Self-defense is classified as a defense. *Id.* at 594. The burden of persuasion is not one that requires the production of evidence but requires only that the State prove its case beyond a reasonable doubt. *Saxton v. State,* 804 S.W.2d 910, 913 (Tex.Crim.App.1991). Thus, when conducting a factual sufficiency review, the inquiry is whether there was sufficient evidence for a reasonable juror to *disbelieve* the self-defense testimony. *Juarez v. State,* 961 S.W.2d 378, 385 (Tex.App.-Houston [1st Dist.] 1997, pet. ref'd). We review all of the evidence in a neutral light and ask whether the State's evidence taken alone is too weak to support the finding and whether the proof of guilt, although adequate if taken alone, is against the great weight and preponderance of the evidence. *Johnson v. State,* 23 S.W.3d 1, 11 (Tex.Crim.App.2000).

Padilla testified that, when he approached the victim's bed, she woke up and attacked him. Pictures of him with scratches on his face and a bruise on his arm were entered into evidence. He admitted hitting the victim a few times in the face but contended that he did so to calm her down. On cross-examination, he testified that he had been drinking that night and that, when he drinks, he becomes a different person. He also admitted that it was unnecessary to hit the victim enough to blacken her eye or bruise her face to defend himself. The victim testified that, when she woke up and saw Padilla, he started punching and threatening her. Pictures of the victim show significant bruising, two black eyes, and several cuts. Medical testimony established that she had

multiple fractures. Pictures of the victim's house show blood on the floor, in the bathroom, and on her bed.

The pictures of Padilla and his testimony are some evidence of self-defense. The State, therefore, had the burden of persuasion. There was factually sufficient evidence for a rational juror to disbelieve Padilla and to conclude that he was the aggressor or that the force he used was unreasonable. The evidence is neither too weak to support the jury's finding nor is that finding against the great weight and preponderance of the evidence. We overrule Padilla's third issue.

### B. Admission of Evidence.

#### 1. Standard of Review.

█ A trial court's decision to admit or exclude evidence is reviewed under an abuse of discretion standard. *Burden v. State*, 55 S.W.3d 608, 615 (Tex.Crim.App. 2001). An appellate court will not reverse a trial court's ruling unless that ruling falls outside the zone of reasonable disagreement. *Id.* Evidence is relevant if it has the tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. Tex.R. Evid. 401. Generally, relevant evidence is admissible. Tex.R. Evid. 402. Relevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury or by considerations of undue delay or needless presentation of cumulative evidence. Tex.R. Evid. 403.

#### 2. Extraneous Offense Testimony.

█ Padilla asserts that the trial court abused its discretion when it admitted evidence that he drove by the victim's workplace and threatened to kill her. He asserts that the evidence was not relevant under Rules 401 and 402 and that, if it was relevant, it failed to meet the prejudicial balancing test in Rule 403. He also asserts that he failed to receive notice of the extraneous offense as required by Tex.R. Evid. 404(b).

The victim testified that Padilla would drive past her place of work and say, "I'm going to kill you, B″ . . . ." After a hearing outside the presence of the jury, the trial court overruled Padilla's objection and denied his motion for mistrial. However, the court gave the jury a limiting instruction to only consider the extraneous evidence if the jury believed the incident occurred beyond a reasonable doubt and only for the purpose of determining intent, knowledge, identity, motive, or common plan or scheme.

The State was required to show that Padilla intended to cause the victim serious bodily injury to prove that he committed an aggravated assault. Evidence that Padilla was threatening her before the assault goes to the heart of Padilla's intent. Furthermore, the probative value of the evidence was not substantially outweighed by unfair prejudice. Padilla's threat was only mentioned during the victim's testimony. The State did not pursue the testimony further and did not discuss the evidence in closing argument. Also, the court gave the jury a limiting instruction both at the time the evidence was admitted and later in the jury charge.

█ The State admits that it did not notify counsel of this specific testimony. The trial court, therefore, erred when it admitted the testimony. *See Hernandez v. State*, 176 S.W.3d 821, 824 (Tex.Crim.App. 2005) (It is error to admit Rule 404(b) evidence when the State does not comply with the rule's notice provisions.). Before we can reverse, however, we must analyze this error for harm. When the court erroneously admits Rule 404(b) evidence over a

valid notice objection, we do not consider whether the evidence affected the jury's verdict because the evidence is substantively admissible. Instead, we consider how the lack of notice affected the defendant's ability to prepare a defense to the wrongfully admitted evidence. *Id.* at 825.

Padilla made no showing in the trial court that his defensive strategy would have been different if the State had given him proper notice or that his defense was injuriously affected by the lack of notice. Nor does Padilla claim in his brief that the lack of notice prejudiced his ability to prepare or present his defense to the wrongfully admitted evidence. Because no harm is shown, Padilla's fourth issue is overruled.

### 3. Victim's Pending DWI Charge.

█ Padilla argues that the trial court should have allowed evidence of the victim's prior inconsistent statement regarding a pending DWI charge. While cross-examining the victim, Padilla attempted to establish that the victim represented to the Permian Basin Community Center that she did not have any legal problems even though she had a pending DWI. The State objected. Padilla argued that the testimony was admissible as a prior inconsistent statement. The trial court ruled that the testimony was inadmissible but left open the possibility that it could become admissible if the victim misled the jury.

Padilla made an offer of proof. He asked the victim if she remembered going to the Crisis Assessment Center and completing some forms. She testified that she did not. When asked why someone would have checked a box "no" regarding legal problems, she testified that she did not know. When asked if she were going through legal problems at that time, she said no and, in response to a subsequent question, testified that she had a DWI that

had been pending for two years but that she did not consider it a legal problem.

Witnesses may be impeached with prior inconsistent statements. TEX.R. EVID. 613(a). The statement, however, must be inconsistent with the witnesses' trial testimony. 2A Steven Goode et al., *Texas Practice: Courtroom Handbook on Texas Evidence* 613 (2007 ed.). Assuming that a pending DWI is a legal problem and that the box on the Crisis Center's form should have been checked "yes," Padilla does not point to any inconsistent trial testimony. We note also that the trial court, in its exercise of discretion, could have taken into account the fact that a pending charge is normally not admissible because it is not a final conviction as required by TEX.R. EVID. 609 and that specific instances of a witness's conduct may not be used to bolster or attack their credibility. TEX.R. EVID. 608(b). Finally, because the victim testified that she did not remember completing any forms at the Crisis Assessment Center, the trial court could have also considered the lack of authentication. The trial court did not abuse its discretion by excluding evidence of the victim's pending DWI. Padilla's fifth issue is overruled.

### 4. Testimony of Padilla's Cell–Mate.

█ The State offered testimony from Kevin Land who was incarcerated with Padilla before trial. Land testified that Padilla told him that "he would have been better off if he had just killed her." Padilla objected to Land's testimony under Rule 403. In a Rule 403 analysis, a trial court must balance (1) the inherent probative force of the proffered item of evidence along with (2) the proponent's need for that evidence against (3) any tendency of the evidence to suggest decision on an improper basis, (4) any tendency of the evidence to confuse or distract the jury from the main issues, (5) any tendency of the evidence to be given undue weight by a

jury that has not been equipped to evaluate the probative force of the evidence, and (6) the likelihood that presentation of the evidence will consume an inordinate amount of time or merely repeat evidence already admitted. *Gigliobianco v. State,* 210 S.W.3d 637, 640 (Tex.Crim.App.2006).

In this case, the probative value of Land's testimony was considerable. At a minimum, it combated his self-defense theory. It also shed light on his intent. Because the jury was required to determine Padilla's intent, the evidence did not suggest a decision on an improper basis. The jury was unlikely to give Land's testimony undue weight because it was well aware of his potential bias. Counsel established that Land received a favorable sentence in exchange for testifying and that Land was a member of a white supremacist group. Land's testimony was short, and it did not distract or confuse the jury. The trial court did not abuse its discretion by allowing Land's testimony. We overrule Padilla's sixth issue.

### C. Reasonable Doubt Instruction in Jury Charge.

■ The original court's charge contained an instruction on the definition of "beyond a reasonable doubt." Neither party objected to the inclusion of this instruction. While reading the charge to the jury, the trial court realized that the instruction was in the charge and called counsel to the bench. The trial court informed them that it did not believe the instruction should be in the charge and that the instruction would be removed. Padilla objected to removing the instruction because neither party had objected to its inclusion.

A trial court must submit a written charge to the jury setting forth the law applicable to the case. TEX.CODE CRIM. PROC. ANN. art. 36.14 (Vernon 2007). An instruction on the definition of "beyond a

reasonable doubt" was once a required element. *See Geesa v. State,* 820 S.W.2d 154 (Tex.Crim.App.1991). But this requirement was eliminated by *Paulson v. State,* 28 S.W.3d 570, 573 (Tex.Crim.App. 2000). In *Paulson,* the court held that it is a better practice to not define reasonable doubt; however, the court also stated that, "if both the State and defense were to agree to give the *Geesa* instruction to the jury, it would not constitute reversible error for the trial court to acquiesce to their agreement." *Id.* This does not mean that the court is bound by the parties' agreement or that, if the court notices that an unrequested *Geesa* instruction was somehow included in the charge, it cannot remove it. The trial court was within its discretion to remove the instruction. We overrule Padilla's seventh issue.

### IV. *Holding*

We affirm the judgment of the trial court.