NUMBER 13-10-447-CR



# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

JONATHAN RIVERA,                                                    **Appellant,**

**v.**

THE STATE OF TEXAS,                                                **Appellee.**

**On appeal from the 36th District Court
of San Patricio County, Texas.**

# MEMORANDUM OPINION

**Before Justices Garza, Vela, and Perkes
Memorandum Opinion by Justice Vela**

A jury convicted appellant, Jonathan Rivera, of the third-degree felony offense of assault involving family violence. *See* TEX. PENAL CODE ANN. § 22.01(a)(1), (b)(2)(A) (West Supp. 2010). The trial court assessed punishment at eight years' imprisonment, plus a $2,000 fine. In a single issue, Rivera contends the evidence is legally and

factually insufficient to show he intentionally or knowingly caused bodily injury to the victim by striking her with his hand. We affirm.

## I. Factual Background

On December 10, 2009, Katherine Rivera went to Taft, Texas to pick up her four-year-old son, who was staying at the home of her mother-in-law, Sandra Gonzales. Because Katherine arrived there late at night, she decided to spend the night at Gonzales's home. While Katherine was in bed with her son, the bedroom light came on, and Katherine saw her husband, Jonathan Rivera, standing in the doorway. He tried to lay on the bed with her, but she turned her back to him and asked him to get out of the room. After she told him this, he began choking her. Katherine testified that Jonathan's brother, Timothy Gonzales, came to her aid and put "Jonathan against the wall." Katherine stated that as Jonathan was leaving the bedroom, "he turned around and he punched me in the face" with "[a] closed fist." She said that when he punched her, "[i]t hurt."

Shortly after this incident, Officer Justin Martinez and Deputy Ernest Solis Jr., responded to a 9-1-1 call from the Gonzales home. When Officer Martinez approached the Gonzales home, he heard what sounded like "kids yelling" inside the house. He said they were "screaming for help and to stop." Officer Martinez entered the house and saw that Katherine was crying and appeared distressed as if "she had been involved in some kind of incident." He saw "redness" on her face and neck. Officer Martinez testified that Katherine told him that:

> while she was sleeping that Jonathan had come into the room and began choking her. She said this is what woke her up. As she woke up she

2

noticed that he was on top of her with both hands she said around her neck. She also said that after a little while he raised his hand and started punching her in the face. And that's why she was upset, that's what caused the redness, she said.

When Officer Martinez saw Jonathan in the living room, he "could smell the alcohol coming from him[.]" Jonathan "appeared to be angry" and told Officer Martinez that "nothing was wrong, that they were fine."

When Deputy Solis approached the Gonzales home, he heard "people screaming and yelling" inside the residence. When he entered the house, he saw that Officer Martinez had Jonathan in handcuffs. Deputy Solis saw that Katherine was "upset," "crying," and "distraught." He saw "redness around her neck area, and on the left side of her face. . . ." He testified that Katherine told him that, "Jonathan Rivera woke her up and they started to argue, and that he punched her in the face." She also said she "had been choked" by Jonathan.

On the night in question, Jonathan's mother, Gonzales, was asleep when her daughter told her she needed to get up because Jonathan was in the house. Gonzales saw Jonathan standing in the living room. When she asked him what was going on, he told her, "Nothing, just go back to bed." She testified Jonathan asked her "why I had that b-i-t-c-h staying there after everything she had done to him and to my family." Gonzales did not see Jonathan assault Katherine, and she did not see any injuries on Katherine.

Jonathan's brother, Timothy Gonzales, testified he was sleeping when his mother came into his bedroom and said, "Go talk to Jon." Timothy saw Jonathan in the living room and heard him "yelling" at Katherine, who was in Jonathan's bedroom. When the prosecutor asked Timothy, "And you had to hold Jonathan back from Katherine?", he

3

said, "I didn't have to; I was doing it." Timothy did not see any injuries on Katherine.

Jonathan's sister, A.G., testified that on the night in question, she did not see any injuries on Katherine. She stated she did not see Jonathan hit Katherine in the face.

The defense rested without calling any witnesses.

## II. DISCUSSION

In his sole issue, Rivera contends the evidence is legally and factually insufficient to prove he intentionally or knowingly caused bodily injury to Katherine by striking her with his hand. We review his sufficiency complaint under only the standard set out in *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). *See Brooks v. State*, 323 S.W.3d 893, 895 (Tex. Crim. App. 2010) (overruling *Clewis v. State*, 922 S.W.2d 126 (Tex. Crim. App. 1996)).

### A. Standard of Review

"When conducting a legal sufficiency review, a court must ask whether '*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt'—not whether '*it* believes that the evidence at trial established guilt beyond a reasonable doubt.'" *Laster v. State*, 275 S.W.3d 512, 517 (Tex. Crim. App. 2009) (quoting *Jackson*, 443 U.S. at 318-19) (emphasis in original). "In doing so, we assess all of the evidence 'in the light most favorable to the prosecution.'" *Id.* (quoting *Jackson*, 443 U.S. at 319). "After giving proper deference to the fact finder's role, we will uphold the verdict unless a rational fact finder must have had reasonable doubt as to any essential element." *Id.* at 518. We must presume that the fact finder resolved any conflicting inferences in favor of the prosecution and defer to that resolution. *Jackson*, 443 U.S. at 326.

4

## B. Applicable Law

Our review of a legal sufficiency challenge should be examined under the principles of review for a hypothetically correct jury charge. *Grotti v. State*, 273 S.W.3d 273, 280-81 (Tex. Crim. App. 2008). "'Such a charge [is] one that accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof, or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried.'" *Villarreal v. State*, 286 S.W.3d 321, 327 (Tex. Crim. App. 2009) (quoting *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997)).

The Texas Legislature has defined the crime of assault in section 22.01 of the penal code. Subsection (a) of that provision sets out three separate and distinct assaultive crimes, one of which is relevant to the present discussion: "(a) A person commits an offense if the person: (1) Intentionally, knowingly, or recklessly causes bodily injury to another, including the person's spouse[.]" TEX. PENAL CODE ANN. § 22.01(a)(1) (West Supp. 2010). "Subsection (1)—'bodily injury' assault is a result-oriented assaultive offense. . . ." *Landrian v. State*, 268 S.W.3d 532, 536 (Tex. Crim. App. 2008). "Bodily injury" is defined as "physical pain, illness, or any impairment of physical condition." TEX. PENAL CODE ANN. § 1.07(a)(7) (West Supp. 2010).

"A person acts intentionally, or with intent, with respect to the nature of his conduct or to a result of his conduct when it is his conscious objective or desire to engage in the conduct or cause the result." *Id*. § 6.03(a) (West 2003). "A person acts knowingly, or with knowledge, with respect to a result of his conduct when he is aware that his conduct

5

is reasonably certain to cause the result." *Id.* § 6.03(b). A person's knowledge and intent may be inferred from the "acts, words, and conduct of the accused." *Hart v. State*, 89 S.W.3d 61, 64 (Tex. Crim. App. 2002).

## C.  Analysis

In this case, the jury could convict Rivera of the indicted offense if they found, in relevant part, that he "intentionally, knowingly or recklessly cause[d] the bodily injury to Katherine Rivera, . . . by striking the said Katherine Rivera with the defendant's hand, . . . ." Katherine testified that as Jonathan was leaving the bedroom, "he turned around and he punched me in the face" with "[a] closed fist." She said that when he punched her, "[i]t hurt."

Whether to believe Katherine's trial testimony is ultimately a credibility determination for the jury. *See Padilla v. State*, 254 S.W.3d 585, 590 (Tex. App.–Eastland 2008, pet. ref'd) (stating that "[w]hether to believe [the victim's] trial testimony is ultimately a credibility determination"). If believed, Katherine's testimony alone is sufficient to support a guilty verdict. *See Candaleria v. State*, 776 S.W.2d 741, 743 (Tex. App.–Corpus Christi 1989, pet. ref'd) (holding that the victim's testimony was sufficient to establish that the defendant intentionally or knowingly caused the victim's bodily injury). In addition, Officer Martinez and Deputy Solis arrived at the Gonzales residence shortly after the incident and saw "redness" on Katherine's face. A rational jury could also consider this evidence as corroborative of Katherine's testimony that Rivera had punched her on the face. *See Padilla*, 254 S.W.3d at 590 (stating that "[a] rational jury could also consider the evidence corroborating [the victim's] testimony and

6

determine that [the defendant] was guilty of aggravated assault beyond a reasonable doubt."). Based upon the evidence in this case, a rational fact finder could have concluded that Rivera was aware that his conduct in punching Katherine on the face with his fist was reasonably certain to cause bodily injury to her. *See* TEX. PENAL CODE ANN. § 6.03(b).

After considering all of the evidence in the light most favorable to the verdict, we hold the evidence is legally sufficient to prove beyond a reasonable doubt that Jonathan Rivera intentionally or knowingly caused bodily injury to Katherine Rivera by striking her with his hand. The sole issue for review is overruled.

### III. CONCLUSION

We affirm the trial court's judgment.

ROSE VELA
Justice

Do not publish.
TEX. R. APP. P. 47.2(b).

Delivered and filed the
12th day of May, 2011.

7