NUMBER 13-10-307-CR

 

COURT OF APPEALS

 

THIRTEENTH DISTRICT
OF TEXAS

 

CORPUS CHRISTI - EDINBURG  

                                                                                                                     


 

WALTER DAVID OLEJNIK,                                                         
     Appellant,

 

v.

 

THE STATE OF TEXAS,                         
                             Appellee.

                                                                                                                     
  

 

On appeal from the 92nd
District Court 

of Hidalgo County,
Texas.

                                                                                                                     


 

MEMORANDUM OPINION

 

Before Justices Garza,
Vela, and Perkes 

Memorandum Opinion by
Justice Vela

                                                                                                                                    

A jury found appellant, Walter David Olejnik,
guilty of theft of property of the value of $1,500 or more, but less than
$20,000, a state jail felony.  See Tex.
Penal Code Ann. § 31.03(e)(4)(A) (West Supp. 2010).  The trial court
assessed punishment at two years in prison and a $2,000 fine, suspended and
probated over five years, with the standard conditions of community supervision
and conditions that Olejnik pay $8,500 restitution, perform 120 hours of
community service, and attend the theft offender intervention program.  On
appeal, Olejnik raises four issues, which we combine into three:  (1) whether
the trial court erred by allowing the State to cross-examine him about
communications that may have been protected by the attorney-client privilege;
(2) whether the evidence was legally sufficient; and (3) whether the trial
court erred in admitting State’s exhibit no. 1.  We affirm. 

I. Factual Background

            Christina Knoles is an owner of Mission
Bell-Trade Winds RV Resort, an RV resort in Mission, Texas.  She lives in
Colorado and does not personally manage the park. Consequently, Walter Olejnik
was hired as the park’s general manager.  His responsibilities included the
duty to handle the park’s money and make deposits for the park at Wells Fargo
Bank.  He served as the park’s general manager for about three and one-half
years.

            Knoles testified that between February 14,
2009 and March 14, 2009, she and her husband came to Mission to investigate
matters at the park.  During this visit, Christina Knoles notified Olejnik that
she and her husband were going to hire a new office manager because of customer
complaints and problems at the park.  They did not fire Olejnik but wanted him
to train the new office manager.  

On April 7, 2009, the Knoleses returned
to the park for a “surprise visit.”  According to Christina, Olejnik became
“defensive” and “not very cooperative.”  The Sunday after they arrived, Olejnik
began to move things out of the manager’s office.  Christina told him to stop
because she did not want any receipts or customer information to be misplaced. 
She testified that when she asked Olejnik for his keys, he gave her a set of
keys but failed to return the key to his personal office at the park.

            The next day, Christina went back to the
manager’s office to verify the state of the workplace and see if anything was
missing.  She testified that at this time, she found a misplaced cash receipt
for $2,260.10 from one of the residents, Mr. St. Louis.  The receipt was found
in a stack of Olejnik’s personal mail.

Shirley Kingswell worked in the park’s
office with Olejnik.  She testified that Mr. St. Louis had paid cash in the
amount of “over $2,000,” on March 27, 2009 for “annual rent” and utilities. 
However, Christina testified that when she and Kingswell checked the park’s
computer system, they discovered that someone had deleted Mr. St. Louis’s name
from the system.  Kingswell testified that in order to delete a name from the
system, a person must have a specific administrative code.  Kingswell stated that
Olejnik was the only person in the office who was in possession of that
particular code.  Christina also testified that she was not in possession of
this code. 

In addition, Christina testified that
when she began to investigate Olejnik, she contacted Wells Fargo Bank and asked
for the deposit information for March 27, 2009, the date on the receipt found
on Olejnik’s desk.  Christina estimated that the deposit should have been about
$37,000.  However, on that particular date, there was only about $35,000
deposited.  According to Christina, when she approached Olejnik about the
missing money, he did not deny taking it, and he offered to resolve the issue. 

Both Kingswell and another employee,
Carol Swan, testified that cash in the park’s office is often placed in
unsecured locations.  Swan also stated that other people, who were not
front-office employees, would often come behind the counter. 

On cross-examination, defense counsel suggested
that Swan could have been a potential suspect.  Swan testified that the key to
the park’s office safe was easily accessible because, “everyone knew where it
was” and sometimes the door to the safe was left ajar.

Investigator David Garcia was assigned
to the case and met with Olejnik.  He did not testify that Olejnik made any
admissions regarding his responsibility for the missing cash.  On
cross-examination, defense counsel told Investigator Garcia that Olejnik had
not been previously arrested.

Olejnik testified on his own behalf that
he had no financial problems and had nothing to do with stealing the money from
the park.  On cross-examination, when the prosecutor asked Olejnik, “Have you
ever been arrested?”, he said, “Probably twenty years ago with an altercation
with my son, I believe.”  After hearing his answer, the prosecutor asked him,
“Your attorney said you had not been arrested.  Why did he say that?”  To this,
he stated, “It’s something that I did forget.  It’s been twenty something years
ago, and I don’t remember, you know, what happened.”    

 

 

 

 

II. Discussion

A. Sufficiency of the Evidence

We first address Olejnik’s second and
third issues challenging the legal sufficiency of the evidence.[1] 
“When conducting a legal sufficiency review, a court must ask whether ‘any
rational trier of fact could have found the essential elements of the crime
beyond a reasonable doubt’—not whether ‘it believes that the evidence at trial
established guilt beyond a reasonable doubt.’”  Laster v. State, 275
S.W.3d 512, 517 (Tex. Crim. App. 2009) (quoting Jackson v. Virginia, 443
U.S. 307, 318-319 (1979)).  “In doing so, we assess all of the evidence ‘in the
light most favorable to the prosecution.’”  Id. (quoting Jackson,
443 U.S. at 319).  We must presume that the fact finder resolved any
conflicting inferences in favor of the prosecution and defer to that
resolution.  Jackson, 443 U.S. at 326.

A person commits the offense of theft if
he unlawfully appropriates property with intent to deprive it from the owner.  Tex. Penal Code Ann. § 31.03(a) (West
Supp. 2010).  To appropriate property is “to acquire or otherwise exercise
control over property other than real property.”  Id. § 31.01(4)(B). 
“Exercise control” means the intent to deprive the owner of his property
without his effective consent.  Id. § 31.03(b); Wilson v. State,
671 S.W.2d 120, 122 (Tex. App.—Houston [1st Dist.] 1984, pet. ref’d).  Intent
to deprive is determined from the words and acts of the accused.  Id. 
The elements of a crime may be established through direct or circumstantial
evidence or reasonable inferences arising from that evidence.  Wiggins v.
State, 255 S.W.3d 766, 771 (Tex. App.—Texarkana 2008, no pet.); Roberson
v. State, 16 S.W.3d 156, 167 (Tex. App.—Austin 2000, pet. ref’d).

Here, a rational jury could conclude
from the evidence that:  (1) Christina Knoles was an owner of the park; (2)
Olejnik was the park’s manager and had the duty to handle the park’s money and
make deposits for the park at Wells Fargo Bank; (3) one of the park’s tenants,
Mr. St. Louis, paid cash in the amount of “over $2,000” on March 27, 2009 for
“annual rent” and utilities; (4) in a stack of Olejnik’s personal mail, Knoles
found a misplaced cash receipt for $2,260.10 from Mr. St. Louis; (5) Mr. St.
Louis’s name was deleted from the park’s computer system by someone; (6)
Olejnik was the only person in the park’s office who was in possession of the
code needed to delete a park tenant’s name from the computer system; (7)
deposit information from Wells Fargo Bank for March 27, 2009, the date on the
receipt found on Olejnik’s desk, showed that about $35,000 was deposited; there
should have been about $37,000 deposited; (8) when Knoles approached Olejnik
about the missing money, he did not deny taking it and offered to resolve the
issue; and (9) Knoles did not have the code needed to delete a tenant’s name
from the park’s computer system.

The contrary evidence showed that
Olejnik testified he had no financial problems and did not steal any money from
the park.  Other evidence showed that cash in the park’s office was often
placed in unsecured locations.  Other people, who were not front-office
employees, would often come behind the counter.  The key to the park’s office
safe was easily accessible because, “everyone knew where it was” and sometimes
the door to the safe was left ajar.   

Whether to believe the witness’
testimony is ultimately a credibility determination for the jury to decide.  See
Padilla v. State, 254 S.W.3d 585, 590 (Tex. App.—Eastland 2008, pet.
ref’d).  After considering all of the evidence in the light most favorable to
the verdict, we hold the evidence is legally sufficient to prove beyond a
reasonable doubt that Olejnik was guilty of theft.  Issues two and three are
overruled. 

B. Attorney-Client Privilege

In issue one, Olejnik argues the trial
court erred during the guilt-innocence stage because the State was allowed to
cross-examine him about communications that he had with his attorney.  Olejnik
argues on appeal that the trial court should have sustained his attorney’s
objection with regard to whether or not Olejnik had informed his counsel that
he had been arrested previously.

1. Applicable Law

Rule 503(b)(2), entitled “Special Rule
of Privilege in Criminal Cases,” grants a client a privilege to prevent his
lawyer from “disclosing any other fact which came to the knowledge of the
lawyer . . . by reason of the attorney-client relationship.”  Tex. R. Evid. 503(b)(2).  The purpose
of the attorney-client privilege is to promote communication between attorney
and client unrestrained by fear that these confidences may later be revealed.  Austin
v. State, 934 S.W.2d 672, 673 (Tex. Crim. App. 1996).  The party asserting
the privilege has the burden of establishing it.  Harvey v. State, 97
S.W.3d 162, 168 (Tex. App.—Houston [14th Dist.] 2002, pet. ref’d) (citing Strong
v. State, 773 S.W.2d 543, 552 (Tex. Crim. App. 1989)).

We review the trial court’s decision on
the applicability of a privilege for an abuse of discretion.  See Torres v.
State, 71 S.W.3d 758, 760 (Tex. Crim. App. 2002); Welch v. State,
908 S.W.2d 258, 265 (Tex. App.—El Paso 1995, no pet.); Anderson v. State,
880 S.W.2d 35, 37 (Tex. App.—Tyler 1994, pet. ref’d).  If the trial court’s
ruling falls within the zone of reasonable disagreement and is correct under
any theory of law applicable to the case, we affirm its decision.  Winegarner
v. State, 235 S.W.3d 787, 790 (Tex. Crim. App. 2007).    

2. Preservation of Error

            On cross-examination, during the
guilt-innocence phase, the prosecutor asked Olejnik, “Did you tell defense
counsel that you had never been arrested?”  Olejnik replied, “Yes, sir.”  After
Olejnik answered the question, defense counsel objected as follows:  “That gets
into the attorney-client privilege.  He cannot ask about what he told me and he
knows that.”  The trial court overruled the objection and told the prosecutor,
“Go ahead.  You can ask him that.”  Then, the prosecutor asked Olejnik, “Did
you tell defense counsel that you had never been arrested prior to this
incident?”  To this, he said, “Yes, sir.”  

Rule
33.1 of the Texas Rules of Appellate Procedure, governing preservation of
error, states, in part:

(a) In General. - As
a prerequisite to presenting a complaint for appellate review, the record must
show that:

 

(1) the complaint was
made to the trial court by a timely request, objection, or motion that:

 

(A) 
stated
the grounds for the ruling that the complaining party sought from the trial
court with sufficient specificity to make the trial court aware of the
complaint, unless the specific grounds were apparent from the context.

 

Tex.
R. App. P. 33.1 (emphasis added).

 “To avoid forfeiting a complaint on
appeal, the party must ‘let the trial judge know what he wants, why he thinks
he is entitled to it, and to do so clearly enough for the judge to understand
him at a time when the judge is in the proper position to do something about
it.’”  Pena v State, 285 S.W.3d 459, 464 (Tex. Crim. App. 2009) (quoting
Lankston v. State, 827 S.W.2d 907, 909 (Tex. Crim. App. 1992)).  This allows
the trial court and the opposing party an opportuntiy to correct the error.  Id.

An objection is timely if it is made as
soon as the ground for the objection becomes apparent.  Lagrone v. State,
942 S.W.2d 602, 618 (Tex. Crim. App. 1997).  “If a defendant fails to object
until after an objectionable question has been asked and answered, and he can
show no legitimate reason to justify the delay, his objection is untimely and
error is waived.”  Id.  It is also necessary for the objecting party to
continue to object each time the objectionable question or evidence is offered,
obtain a running objection, or request a hearing outside the jury’s presence in
order to preserve a complaint for appellate review.  See Martinez v. State,
98 S.W.3d 189, 193 (Tex. Crim. App. 2003); Fuentes v. State, 991 S.W.2d
267, 273 (Tex. Crim. App. 1999).

With respect to the first question posed
to Olejnik, the ground for objection became apparent as soon as the prosecutor
asked the question.  Thus, the objection was untimely because it was not made
until after the prosecutor’s question had been asked and answered. 
Furthermore, no legitimate reason was offered to justify the late objection. 
Therefore, the complaint is not preserved for appellate review.  See Lagrone,
942 S.W.2d at 618.

Additionally, no objection was made with
respect to the second question posed to Olejnik.  And, defense counsel neither
obtained a running objection nor requested a hearing outside the jury’s
presence in order to preserve the complaint for appellate review.  Therefore,
any complaint about the second question was waived.  See Martinez, 98
S.W.3d at 193; Fuentes, 991 S.W.2d at 273.  

Even assuming the error was preserved,
we find no harm. Rule 44.2(b) provides that “any other error, defect,
irregularity, or variance that does not affect substantial rights must be
disregarded.”  Tex. R. App. P. 44.2(b).  A conviction should not be
overturned if the appellate court, after examining the record as whole, has
fair assurance that the error did not influence the jury, or had but a slight
effect.  Ex parte Martinez, 330 S.W.3d 891, 903 (Tex. Crim. App. 2011). 
Pointing out Olejnik’s prior arrests and the fact that he withheld this
information from his trial attorney was not the “death knell” in this case, as
represented by Olejnik’s counsel.  Further, the comments were merely passing
references in the prosecution’s closing argument, and other evidence submitted
during trial was more than adequate to find Olejnik guilty.  Therefore, even if
the objection was timely made, error, if any, was harmless.   Issue one is
overruled.  

 

 

 

C. Admissibility of State’s Exhibit No. 1  

In his final issue, Olejnik argues the
trial court erred in admitting State’s exhibit no. 1.  Specifically, he argues
the custodian of records had no personal knowledge of the documents prepared.

1. Background

Yolanda Salinas, a bank manager for
Wells Fargo Bank in Mission, Texas testified she is “the custodian of records”
for that bank and that she had an opportunity to review the documents included
in State’s exhibit no. 1, which is a collection of the park’s deposit slips. 
She stated the deposits in question in this case were deposited at that bank. 
When the prosecutor offered the exhibit into evidence, defense counsel objected
that the State did not lay the proper predicate for business records.

Before ruling on the objection, the
trial court allowed defense counsel to question Salinas on voir dire.  She
testified State’s exhibit no. 1 included “approximately” 100 pages and that she
reviewed the records included in the exhibit.  Based upon the declaration and
the affidavit in the back of the exhibit, she had personal knowledge that Jaime
Baca, who worked in the bank’s legal department, made these records.  When
asked if she had “any personal knowledge of that affidavit or declaration,” she
said, “I basically have knowledge—I reviewed these records as far as the
contents of it but it was not prepared by me.  It was prepared by somebody from
the Subpoena Department.”  She did not see the exhibit being prepared, but she
stated, “I have knowledge of the content.  Yes, I do as far as I reviewed it. 
But as far as me completing it, it wasn’t me.  It was somebody from that
department.”  When defense counsel asked her, “And in response to the line of
questioning by [the prosecutor] as to whether or not the records were prepared
in a reliable manner and they were transmitted in a reliable manner, you simply
have no personal knowledge of that, do you?”, she said, “I know that they were
prepared by the person who was responsible for preparing them, so yes.”  The
trial court overruled the objection.

2. Analysis

A trial court’s decision to admit or
exclude evidence is reviewed under an abuse-of-discretion standard.  Torres
v. State, 71 S.W.3d 758, 760 (Tex. Crim. App. 2002).  “The trial court
abuses its discretion when the decision lies outside the zone of reasonable
disagreement.”  McCarty v. State, 257 S.W.3d 238, 239 (Tex. Crim. App.
2008).  “[I]f the trial court’s evidentiary ruling is correct on any theory of
law applicable to that ruling, it will not be disturbed even if the trial judge
gave the wrong reason for his right ruling.”  De La Paz v. State, 279
S.W.3d 336, 344 (Tex. Crim. App. 2009).

To be admitted as business records, records
must be “made at or near the time by, or from information transmitted by, a
person with knowledge, if kept in the course of a regularly conducted business
activity, and if it was the regular practice of that business activity to make
the . . . record. . . .”  Tex. R. Evid.
803(6).  All of these elements must be “shown by the testimony of the custodian
or other qualified witness, . . . .”  Id.  

Here, the State admitted exhibit no. 1
through the testimony of Yolanda Salinas, the custodian of records for Wells
Fargo Bank in Mission.  She testified the records were kept in the regular
course of business at Wells Fargo.  When asked, “[D]id an employee
representative of such records make these records or transmit them regarding
acts, events, conditions, pains or diagnosis?,” she said, “Yes.”  When asked,
“Was it done at or near the time or reasonably soon after the event?,” she
said, “Yes.”  She testified “the employee representative who made the entries
had actual knowledge of the event.”  She said that records are exact duplicates
of the originals, which are on microfilm.  Even though she did not prepare the
records, there is no requirement that the testifying witness must have created
the records, or even that she have personal familiarity of the mode of preparation
of the records.  See Butler v. State, 872 S.W.2d 227, 238 (Tex. Crim.
App. 1994); Campos v. State, 317 S.W.3d 768, 777-78 (Tex. App.—Houston
[1st Dist.] 2010, pet. ref’d); see also Montoya v. State, 832
S.W.2d 138, 141 (Tex. App.—Fort Worth 1992, no pet.).

  Thus, the trial court’s decision to
admit the records contained in exhibit 1 did not fall outside the zone of
reasonable disagreement.  See McCarty, 257 S.W.3d at 239.  We
hold that the trial court did not abuse its discretion by admitting these
records.  Issue four is overruled.

III. Conclusion

            We affirm the trial court’s judgment

 

 

 

                                                                                         ROSE
VELA

                                                                                         Justice

 

Do not publish.

Tex.
R. App. P.
47.2(b).

 

Delivered and filed
the  

23rd day of June, 2011.









[1]
In Brooks v. State, the
court of criminal appeals held that only one standard should be employed to
evaluate whether the evidence is sufficient to support a criminal conviction
beyond a reasonable doubt—legal-sufficiency.  See id. 323 S.W.3d 893,
894-95 (Tex. Crim. App. 2010)(plurality op.); id. at 926 (Cochran, j.,
concurring).  Accordingly, we will apply a legal-sufficiency standard of review
to these two issues.  See Pomier v. State, 326 S.W.3d 378 (Tex.
App.—Houston [14th Dist.] 2010, no pet.)(applying a single standard of review
required by Brooks).