**Opinion issued January 23, 2024**



In The

# Court of Appeals

For The

# First District of Texas

————————————

### NO. 01-22-00836-CR

————————————

**MICHAEL ALLEN LEE, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the 412th Judicial District Court**
**Brazoria County, Texas**
**Trial Court Case No. 91060-CR**

---

### MEMORANDUM OPINION

A jury convicted appellant Michael Allen Lee of aggravated assault and sentenced him to ten years' imprisonment. *See* TEX. PENAL CODE § 22.02. In nine issues, Lee contends his trial counsel rendered ineffective assistance of counsel. We affirm.

## Background

Lee and the complainant, Kayla Emmons, met in 2017 and began dating in early 2018. According to Emmons, Lee became violent within a few months, throwing objects and breaking things in her home. She also contends that Lee's violence turned physical toward her. In early 2020, the couple began dating other people but continued to discuss reconciliation.

One day in April 2020, Emmons was at her boyfriend's house when Lee began calling and texting her cell phone. When Emmons did not answer, Lee left her a voicemail. Emmons did not listen to the voicemail right away. Lee then sent a text message to her, stating: "I'll be waiting for you, check your voicemail." Emmons did not initially see the text message. Later, Emmons received another text message from Lee, asking, "Have you had a dog in your bed?" Emmons became suspicious that Lee was in her home, because her boyfriend had a large dog, and it had slept in her bed. Emmons asked her grandmother to drive by to see if Lee was there, and according to Emmons, her grandmother observed Lee's truck in her driveway. Emmons then called Lee and told him to leave. Lee told her he wanted to see her and was waiting for her. Emmons then checked her voicemail and heard the message Lee left earlier. In the voicemail, Lee said he would see Emmons when she got home.[1] He left the message at approximately 5:30 a.m. Because her conversation

---

[1] This voicemail was admitted at trial.

2

with Lee occurred between 10:00 a.m. and 11:00 a.m., she believed he had been inside her home for several hours.

After speaking with Lee, Emmons called her mother, Tina, and asked her to go by Emmons's house to make sure her firearms were still in her gun safe. Against Emmons's wishes, Tina called police. With Emmons's permission, officers entered her home and confirmed her guns were still in the safe. Emmons also gave officers permission to call Lee and issue a criminal trespass warning, instructing him not to return to her home.

Lee and Emmons subsequently began speaking again. By July 2020, the two spent "almost every other day together." On the evening of July 6, 2020, Emmons invited Lee over to watch a movie. Emmons believed Lee had been drinking. At some point in the evening, Lee became "aggravated" following a telephone call with his brother. According to Emmons, Lee walked into her bedroom, picked up her gun safe, and began "banging" the safe on her bedside table. He then grabbed a lamp and began hitting himself in the head with it. Emmons took the lamp from Lee, and as she turned to place it back on the table, she saw him move his hand to move his shirt, which was covering a gun he was wearing on his hip. Lee then put the gun to Emmons's head for approximately fifteen seconds. Emmons was able to persuade Lee to lower the gun, and she took it from him. When Lee walked into another room, Emmons unloaded the gun and hid it in a drawer. Lee refused to leave the home and

fell asleep on the couch. The next morning, after an argument, Lee left Emmons's home. Emmons then left the home to stay with family and friends.

On July 10, 2020, Emmons called police and asked them to come pick up Lee's gun. During the call, Emmons mentioned that Lee had put the gun to her head days earlier. Officers arrived at Emmons's home, and in explaining why she needed police to take Lee's gun, Emmons described the assault. Though she expressed reluctance to press charges, officers collected the gun as evidence and advised Emmons they would be pursuing aggravated assault charges against Lee.

When Lee returned to Emmons's home on July 26, 2020, asking Emmons to return his gun, Emmons again called police. Later that day, officers arrested Lee for trespassing. In October 2020, a grand jury indicted Lee for aggravated assault with a deadly weapon.

At trial, the State presented testimony from various police officers involved in the investigation, Emmons, and her mother. The defense presented testimony from a former girlfriend, Lee's brother, and his father in support of his alibi that he was not with Emmons on July 6, 2020. Following deliberations, the jury convicted Lee of aggravated assault and sentenced him to ten years' confinement in the Institutional Division of the Texas Department of Criminal Justice. The trial court signed a judgment of conviction on November 10, 2022. Lee did not file a motion for new trial or other post-judgment motion. This appeal followed.

4

## Ineffective Assistance of Counsel

Each of Lee's nine issues raised on appeal concerns allegations of ineffective assistance of counsel. In his first six issues, Lee claims he received ineffective assistance of counsel during the guilt phase of his trial. In his last three issues, Lee argues that his counsel provided ineffective assistance during the punishment proceedings. We address Lee's allegations in turn below.

### A.    Standard of Review and Applicable Law

The Sixth Amendment of the United States Constitution and the Texas Constitution guarantee a criminal defendant the right to reasonably effective assistance of counsel. U.S. CONST. amend. VI; TEX. CONST. art. 1, § 10; *see Lopez v. State*, 343 S.W.3d 137, 142 (Tex. Crim. App. 2011). The right to effective assistance of counsel requires objectively reasonable representation, not errorless performance. *Lopez*, 343 S.W.3d at 142 (citing *Strickland v. Washington*, 466 U.S. 668, 686 (1984); *Robertson v. State*, 187 S.W.3d 475, 483 (Tex. Crim. App. 2006)).

To establish that trial counsel provided ineffective assistance, an appellant bears the burden to demonstrate by a preponderance of the evidence that (1) counsel's performance was deficient, and (2) the deficient performance prejudiced the defense. *Strickland*, 466 U.S. at 687; *Lopez*, 343 S.W.3d at 142. An appellant must establish both prongs before an appellate court will find counsel's representation to be ineffective. *Lopez*, 343 S.W.3d at 142 (citing *Strickland*, 466

U.S. at 687); *see Williams v. State*, 301 S.W.3d 675, 687 (Tex. Crim. App. 2009) ("An appellant's failure to satisfy one prong of the *Strickland* test negates a court's need to consider the other prong.").

To satisfy the first prong, an appellant must show that his trial counsel's performance fell below an objective standard of reasonableness under the prevailing professional norms. *Strickland*, 466 U.S. at 687–88; *Lopez*, 343 S.W.3d at 142. Under the second prong, an appellant must demonstrate prejudice or "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694; *see Lopez*, 343 S.W.3d at 142. A reasonable probability is one sufficient to undermine confidence in the outcome. *Lopez*, 343 S.W.3d at 142.

For an appellate court to find that counsel was ineffective, "counsel's deficiency must be affirmatively demonstrated in the trial record; the court must not engage in retrospective speculation." *Id.* "It is not sufficient that appellant show, with the benefit of hindsight, that his counsel's actions or omissions during trial were merely of questionable competence." *Id.* at 142–43 (quoting *Mata v. State*, 226 S.W.3d 425, 430 (Tex. Crim. App. 2007)). Furthermore, a claim of ineffective assistance of counsel also requires proof of prejudice. *Bone v. State*, 77 S.W.3d 828, 837 (Tex. Crim. App. 2002).

In most cases, the record on direct appeal is undeveloped regarding the motive behind counsel's actions and thus inadequate to prove a claim of ineffective assistance.[2] *See Menefield v. State*, 363 S.W.3d 591, 592–93 (Tex. Crim. App. 2012); *James v. State*, 506 S.W.3d 560, 569 (Tex. App.—Houston [1st Dist.] 2016, no pet.); *see also Thompson v. State*, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999) ("A substantial risk of failure accompanies an appellant's claim of ineffective assistance of counsel on direct appeal."). The Court of Criminal Appeals has repeatedly stated that trial counsel "should ordinarily be afforded an opportunity to explain his actions before being denounced as ineffective." *Menefield*, 363 S.W.3d at 593 (quoting *Goodspeed v. State*, 187 S.W.3d 390, 392 (Tex. Crim. App. 2005)). When trial counsel is not provided an opportunity to explain his actions, we will not find that counsel's performance was deficient unless the challenged conduct was "so outrageous that no competent attorney would have engaged in it." *Id.* (quoting *Goodspeed*, 187 S.W.3d at 392).

All of Lee's ineffective assistance arguments concern his trial counsel's purported failure to object to certain testimony or evidence. When a defendant alleges that his trial counsel was deficient in failing to object to the admission of evidence, the defendant must show: (1) the evidence was inadmissible, and (2) the

---

[2] Claims of ineffective assistance of counsel rejected on direct appeal "due to lack of adequate information may be reconsidered on an application for a writ of habeas corpus." *Lopez v. State*, 343 S.W.3d 137, 143 (Tex. Crim. App. 2011).

7

objection would have been granted. *Lesso v. State*, 295 S.W.3d 16, 21 (Tex. App.—
Houston [1st Dist.] 2009, pet. ref'd).

**B.      Alleged Ineffective Assistance During Guilt/Innocence Phase**

**1.      Failure to Object to Hearsay**

In his first issue, Lee contends that he received ineffective assistance when
trial counsel failed to object to various pieces of testimony that Lee characterizes as
hearsay. Specifically, Lee argues that counsel should have objected to the following
as hearsay: (1) testimony from Tina concerning how she learned of Lee's presence
in Emmons's home in April 2020, (2) testimony from Emmons as to her discussion
with her grandmother in April 2020, and (3) testimony from Officer Guthrie
referring to statements made in his body cam video.

**a.  Testimony from Tina and Emmons Concerning Lee's Presence
in Emmons's Home in April 2020**

Lee argues that trial counsel rendered ineffective assistance in failing to object
to hearsay testimony from Tina and Emmons concerning the April 2020 incident.
Tina testified to conversations with Emmons's grandmother after the grandmother
drove by Emmons's home and observed Lee's truck. Tina also testified that Emmons
told Tina that Lee had asked if there had been a dog in Emmons's bed. Additionally,
Lee complains that his counsel did not object to testimony from Emmons concerning
her phone conversation with her grandmother wherein she learned that Lee's truck
was at her home.

8

Hearsay is an out-of-court statement offered to prove the truth of the matter asserted in the statement and is generally inadmissible. TEX. R. EVID. 801(d), 802. Lee contends that the complained-of portions of testimony were offered to prove that Lee was, in fact, at the home in April 2020. However, even if we were to agree that counsel's failure to object to this testimony was erroneous, we nevertheless conclude that any error was harmless. As Lee admits in his brief on appeal, "it is true that there was other evidence, mostly statements made by Mr. Lee about the April incident . . . ." We note that Emmons testified, without objection, to a phone call with Lee on the date in question wherein Lee admitted he was at her home.[3] Therefore, given the cumulative nature of the complained-of testimony, any error by trial counsel in failing to object was harmless. *See Braughton v. State*, 749 S.W.2d 528, 532 (Tex. App.—Corpus Christi–Edinburg 1988, pet. ref'd), *cert. denied*, 493

---

[3] Emmons testified as follows:

> Q.  You called him. And what did you say originally in that conversation?
>
> A.  First thing I said is are you in my house? And he said yes. I said get out of my house. He said why? I'm waiting for you. I want to see you. And I told him to get out. . . . Eventually he did leave.
>
> . . . .
>
> Q.  How did you know he had left?
>
> A.  He said, fine, I'm leaving, on the phone.

9

U.S. 870 (1989); *see also Toney v. State*, No. 01-94-00239-CR, 1996 WL 183411, at *6 (Tex. App.—Houston [1st Dist.] Apr. 18, 1996, pet. ref'd) (not designated for publication) (concluding that "[w]hen measuring the performance of counsel, failure to object to hearsay evidence that is cumulative of other properly admitted evidence is generally harmless" (citing *Braughton*, 749 S.W.2d at 532)).

Additionally, to the extent Lee complains of out-of-court statements made by Lee, Emmons, or Guthrie, their admission was also harmless because each of these individuals testified at trial and was subject to cross examination. *See, e.g.*, *Thompson v. State*, 665 S.W.2d 188, 190 (Tex. App.—Houston [1st Dist.] 1984, no pet.) (holding no reversible error where complainant who made out-of-court statement was in court, testified on direct and cross-examination, and was available for further examination); *Morales v. State*, 727 S.W.2d 101, 104 (Tex. App.—San Antonio 1987, pet. ref'd) (holding any error in admitting officer's testimony as to what complainant told him was harmless where complainant was present and available during trial for cross-examination and observation by jury; "the usual reasons for excluding hearsay statements [were] not present").

### b. Testimony from Emmons Regarding Her Discussions with Officers

Next, Lee argues that his trial counsel should have objected to the following testimony from Emmons concerning why she installed a doorbell camera after the alleged assault:

10

Q. Because the officers have told you ["]time to [p]ack up and move?["]

A. Yes.

Q. ["]Protect yourself. Leave this house. He knows where you're at?["]

A. Yes.

Lee contends that this testimony was hearsay because it was admitted for its truth; i.e., to establish that Lee would return to harm Emmons if she did not move. We disagree. Rather, the State could have offered this testimony to show the effect the officers' statements had on Emmons—prompting her to install a doorbell camera. Lee appears to acknowledge as much in his briefing, stating that the above testimony from Emmons "explain[ed] why she had installed a doorbell camera after July 6, 2020 . . . ." We therefore reject this ineffective assistance argument. *See McNeil v. State*, 452 S.W.3d 408, 419 (Tex. App.—Houston [1st Dist.] 2014, pet. ref'd) (overruling ineffective assistance argument concerning failure to object and noting that "[s]tatements offered only to show their effect on the listener are not hearsay"); *see also Ex parte Jimenez*, 364 S.W.3d 866, 887 (Tex. Crim. App. 2012) ("The failure to object to proper questions and admissible testimony . . . is not ineffective assistance.").

### c. Testimony from Guthrie

In his final sub-argument concerning hearsay, Lee argues that trial counsel should have objected to testimony from Officer Guthrie concerning (1) his

11

discussions with Emmons on July 10, 2020 and other statements made in Guthrie's body cam video from that day, and (2) his conversation with Officer Santucci concerning the no-trespass warrant.[4]

First, we disagree with Lee that these statements were offered for their truth. An officer's testimony offered to establish the course of events and circumstances leading to the defendant's arrest, and not for the truth, is not hearsay. *See Dinkins v. State*, 894 S.W.2d 330, 347 (Tex. Crim. App. 1995) (citing *Jones v. State*, 843 S.W.2d 487, 499 (Tex. Crim. App. 1992) (holding that extra-judicial statements were not inadmissible hearsay because they were admitted not for truth, but to explain how defendant came to be suspect)); *see also Sosa v. State*, No. 05-11-01294-CR, 2012 WL 5936295, at *4 (Tex. App.—Dallas Nov. 28, 2012, no pet.) (mem. op., not designated for publication) (collecting cases). Here, Guthrie testified concerning his investigation, particularly, his initial encounter with Emmons and her account of the assault. This testimony was admitted to show the effect Emmons's statements had on his role as a police officer. *See Dinkins*, 894 S.W.2d at 347; *see*

---

[4]     Lee contends counsel should have objected to the following testimony from Guthrie as hearsay:

Q.      Do you recall Santucci saying anything about the No[-]Trespass Warrant?

A.      I believe he's the one that issued it to [Lee].

Q.      Okay. And [Santucci] indicated that he had talked to the Defendant?

A.      Correct.

12

*also Flores v. State*, No. 02-21-00028-CR, 2022 WL 3097287, at *6 (Tex. App.—Fort Worth Aug. 4, 2022, pet. ref'd) (mem. op., not designated for publication) (holding no error in admitting officer's testimony concerning what another officer told him about defendant "because it was not offered to prove the truth of the matter asserted; it was admitted to show the effect it had on his role as a police officer").

Second, the testimony complained of is largely cumulative of other properly admitted evidence. Emmons testified concerning the events of July 6, 2020 and her subsequent conversations with Officer Guthrie, and the body cam footage from that date was likewise admitted. As for Guthrie's testimony that Santucci said in the body cam video that Santucci was the officer who issued the no-trespass warrant to Lee, this same general information was admitted elsewhere. Testimony from Sergeant Shoemake and Officer Guthrie, body cam footage from July 10 and July 26, and testimony from Emmons all discuss the issuance of the no-trespass warrant in April 2020.[5] Considering the cumulative nature of Officer Guthrie's testimony, and the fact that the record does not illuminate trial counsel's strategy for failing to object, we determine that any error was harmless. *See Braughton*, 749 S.W.2d at 532; *Toney*, 1996 WL 183411, at *6.

---

[5]     Guthrie's body cam footage is the only evidence specifically identifying Santucci as the officer who issued the no-trespass warrant.

13

Lastly, considering the silent record, we decline to hold trial counsel was ineffective for failing to object to any of the testimony Lee complains of in his first issue, even if the testimony was hearsay. *See Thompson*, 9 S.W.3d at 814 (no deficient performance on silent record as to why trial counsel failed to object to State's "artful questions" as State "doggedly pursued the introduction of inadmissible hearsay"). We overrule Lee's first issue.

## 2. Failure to Object to Admission of Exhibit 13

In his second issue, Lee asserts that he received ineffective assistance when his counsel failed to object to the admission of footage from Officer Guthrie's body camera from July 10, 2020 (Exhibit 13). The record is silent as to trial counsel's strategy. However, in her opening statement, defense counsel asked the jury to "look at the DVDs" and specifically referenced Guthrie's body cam video:

> COUNSEL: As far as the criminal trespass back in April, the officer even -- you'll hear him say on the recordings that, well, if you keep inviting him over it makes it void. So that someone is calling the police and making an accusation, there is no charges. There is no information other than a piece of paper that says a date. There is no signature from [Lee] that he received that. She also says on the recordings, well, I wouldn't tell him. So you're not telling him not to come over. She says she invites him over. So how is he supposed to know that he's not supposed to be there? And the officer, you're going to hear him say at least once, maybe twice, it voids -- it voids anything if you keep inviting him over.

Based on counsel's argument to the jury, it is possible that counsel wanted the jury to see the body camera footage because she wanted the jury to hear from

Emmons that she invited Lee over even after the no-trespass warrant was issued and that officers told Emmons this "voided" the no-trespass warrant. *See Stoneham v. State*, No. 01-21-00462-CR, 2023 WL 3311466, at *5–6 (Tex. App.—Houston [1st Dist.] May 9, 2023, pet. ref'd) (mem. op.) (not designated for publication) (considering ineffective assistance argument concerning counsel's failure to object to body cam footage and noting that where counsel introduced portions of video herself, there was "some evidence, then, that trial counsel did not object to the video's admission because she intended to use the video herself"); *see also McKinny v. State*, 76 S.W.3d 463, 473 (Tex. App.—Houston [1st Dist.] 2002, no pet.) (en banc) ("[A]dvocates must be free to choose not to make [objections] even if they have a legal basis for doing so. . . . [J]urors often see lawyers who make [objections] as 'trying to keep the real truth from them.'") (quoting THOMAS A. MAUET, TRIAL TECHNIQUES, 465 (5th ed. 2000)).

Further, even if trial counsel's failure to object to Guthrie's body cam video was constitutionally deficient, Lee would not be able to establish the second prong of the *Strickland* test—prejudice—because he has not demonstrated that there is a reasonable probability that but for the admission of the video, the outcome of trial would have been different. *See Thompson*, 9 S.W.3d at 812. Again, Lee was charged with aggravated assault with a deadly weapon. *See* TEX. PENAL CODE § 22.02(a)(2); *see also id.* § 22.01. Lee argues that the video was inadmissible, "clearly harmful,"

15

and prejudicial to his defense because statements in the video directly refuted Lee's alibi defense. But the jury did not need to see the video to reject Lee's alibi defense and determine that Lee committed an aggravated assault with a deadly weapon. The jury heard testimony from Emmons herself describing the assault and contradicting Lee's alibi. The jury's verdict indicates the jury believed Emmons's version of events and found her to be credible.

Even without the body cam footage, the jury could have found Lee committed an assault with a deadly weapon based on Emmons's testimony. *See Green v. State*, 465 S.W.3d 380, 382–83 (Tex. App.—Fort Worth 2015, pet. ref'd) (complainant's testimony that she felt gun pressed to head and defendant told her it was gun was sufficient to support deadly weapon finding and conviction for aggravated assault with deadly weapon); *Padilla v. State*, 254 S.W.3d 585, 590 (Tex. App.—Eastland 2008, pet. ref'd) (if believed, complainant's testimony alone could support conviction for aggravated assault with deadly weapon); *Lee v. State*, 239 S.W.3d 873, 878 (Tex. App.—Waco 2007, pet. ref'd) (complainant's testimony identifying shooter in aggravated assault case sufficient to support conviction). Therefore, Lee has not proven the prejudice prong of the *Strickland* test based on trial counsel's failure to object to the body cam video. *See Stoneham*, 2023 WL 3311466, at *6 (concluding appellant could not establish prejudice resulting from counsel's failure

to object to body cam video where appellant testified to exhibiting gun, thus supporting his conviction).

We overrule Lee's second issue.

### 3. Failure to Object to Admission of Exhibit 2

In his third issue, Lee argues that his trial counsel rendered ineffective assistance when she failed to object to the admission of body cam footage from Officer Garcia from July 26, 2020 (Exhibit 2). This video depicts Garcia's discussions with Emmons at her home on July 26, 2020, after Lee came to the home that evening and asked for his gun. Emmons likewise discussed the no-trespass warrant and the July 6, 2020 assault with Garcia. Garcia's body cam also recorded Emmons's phone as she played videos from her doorbell camera showing Lee at the home on July 26, 2020.

To the extent that Lee complains that counsel should have objected to statements made by Emmons in Exhibit 2 discussing the no-trespass warrant issued in April 2020, the assault on July 6, 2020, or the events of July 26, 2020, Emmons testified at trial to essentially the same information. Thus, these statements by Emmons in Exhibit 2 were cumulative of other properly admitted testimony, and any error in their admission was harmless. *See Braughton*, 749 S.W.2d at 532; *Toney*, 1996 WL 183411, at *6. And again, because Emmons testified on both direct and cross examination, the jury was able to evaluate her credibility, which negated the

typical reasons for excluding hearsay. *See Thompson*, 665 S.W.2d at 190; *Morales*, 727 S.W.2d at 104.

Additionally, statements made by Emmons in the July 26, 2020 video concerning the events of that day and how she felt at that time about pressing charges would be admissible under the present sense impression exception to the hearsay rule. *See* TEX. R. EVID. 803(1) (defining "present sense impression" as a "statement describing or explaining an event or condition, made while or immediately after the declarant perceived it"). "The present sense impression exception to the hearsay rule is based upon the underlying premise that the contemporaneity of the event and the declaration ensures reliability of the statement." *Brooks v. State*, 990 S.W.2d 278, 287 (Tex. Crim. App. 1999). The closer in time the statement is to the event, the less likely there will be a calculated misstatement. *Id.*

Because the statements made by Emmons in Exhibit 2 were cumulative of other evidence, she testified at trial, and her statements made on July 26, 2020 concerning the events that day were admissible under the present-sense-impression hearsay exception, we conclude that trial counsel's decision not to object to the admission of those portions of Exhibit 2 does not rise to the level of ineffective assistance of counsel. *See also Ex parte Jimenez*, 364 S.W.3d at 887.

We note that Officer Garcia did not testify at trial and was therefore not available for cross-examination as to the out-of-court statements he made in Exhibit

18

2.[6] However, even if the failure of trial counsel to object to Officer Garcia's body cam footage was erroneous, we conclude (as we did with Officer Guthrie's body cam footage) that Lee did not satisfy the prejudice component of the *Strickland* test because the jury could have found Lee committed an assault with a deadly weapon based on Emmons's testimony alone, even without the body cam footage. *See Green*, 465 S.W.3d at 382–83; *Padilla*, 254 S.W.3d at 590; *Lee*, 239 S.W.3d at 878; *see also Stoneham*, 2023 WL 3311466, at *6 (concluding appellant could not establish prejudice resulting from counsel's failure to object to body cam video where appellant testified to exhibiting gun, thus supporting his conviction).[7] Considering this, as well as the absence of any information explaining trial counsel's strategy for not objecting to the footage, we must overrule Lee's third issue.

### 4. Failure to Object to Victim Impact Testimony

In his fourth issue, Lee claims that his trial counsel failed to object to what he characterizes as victim impact testimony: first, testimony from Emmons's mother

---

[6] The only statements made by Officer Garcia in Exhibit 2 that Lee complains of on appeal are those concerning the issuance of the no-trespass warrant on April 12, 2020. Lee claims these statements were offered to prove that Lee was in fact served with or notified of a no-trespass warrant. As we noted earlier, other testimony and evidence admitted at trial concerned the issuance of the no-trespass warrant in April 2020.

[7] In the body cam footage from Officer Villareal's arrest of Lee on July 26, 2020 (Exhibit 17), Lee admitted that he went to Emmons's house on July 26, 2020 to retrieve his gun from her. Exhibit 17 was admitted at trial, and Lee does not complain about its admission on appeal.

19

that the alleged assault "absolutely" affected Emmons "every day of her life," and second, testimony from Emmons that she "pack[ed] up [her] children and . . . went and stayed at their dad's house with them" and "got[] in to counseling" the week after the alleged incident.

Lee argues that victim impact testimony is only admissible during the punishment phase of trial and thus, trial counsel's failure to object to this testimony during the guilt phase was erroneous. In response, the State argues that the testimony was admissible because it "was used to rebut a defensive theory that had already been presented to the jury"—specifically, that the assault never occurred. We agree. Though victim impact testimony is "generally irrelevant at the guilt phase of trial because it does not tend to make more or less probable the existence of any fact of consequence at that stage," it can be admissible as a "circumstance of the offense." *Longoria v. State*, 148 S.W.3d 657, 659 (Tex. App.—Houston [14th Dist.] 2004, pet. ref'd); *see also Wysack v. State*, No. 01-13-00683-CR, 2015 WL 4366245, at *6 (Tex. App.—Houston [1st Dist.] July 16, 2015, pet. ref'd) (mem. op., not designated for publication) (quoting *Longoria*, 148 S.W.3d at 659). For example, the testimony could be admissible if it tended to make more or less probable whether the defendant committed the crime at all. *Wysack*, 2015 WL 4366245, at *6.

In *Wysack*, this court determined that counsel's failure to object to testimony that the complainant went to counseling, began cutting herself, and attempted suicide

20

was not ineffective assistance, because the testimony was admissible to show that the alleged assault had in fact occurred, rebutting the appellant's theory that the complainant fabricated the assault. *Id.* at \*6–7. Similarly here, Lee's entire defense was that he was not at Emmons's house on July 6, 2020 and therefore, could not have assaulted her. Testimony from Emmons's mother concerning the impact the assault had on Emmons, and Emmons's testimony that she left the following day and then sought counseling, was admissible to refute Lee's alibi and tended to make it more probable that the assault occurred as Emmons alleged. *See id.*; *see also Cueva v. State*, 339 S.W.3d 839, 881 (Tex. App.—Corpus Christi–Edinburg 2011, pet. ref'd) (holding that because victim impact testimony had "tendency to make more or less probable a fact of consequence at the guilt stage" and was admissible for its relevance as to whether appellant committed crime at all, trial counsel's failure to object did not fall below objective standard). Accordingly, we conclude that Lee has not demonstrated that trial counsel's performance was deficient on this ground.

We overrule Lee's fourth issue.

### 5. Failure to Object to Testimony Concerning Officer's Prior Experience

In his fifth issue, Lee argues that his trial counsel rendered ineffective assistance when she failed to object to testimony from Officer Guthrie concerning his experience with and observations from other domestic violence cases. Specifically, Lee complains about the following testimony from Guthrie:

21

> Q. You heard [Emmons] say [on the video] . . . I'm not the kind of woman that would hide bruising. Correct?
>
> A. Correct.
>
> Q. Have you ever been on a domestic violence call where a victim will claim somewhat spontaneously that they don't have a particular kind of injury, they are not doing something, and that turns out to be exactly what it is?
>
> A. Yes.
>
> Q. Okay. So if there was bruising later discovered on [Emmons], that wouldn't have surprised you?
>
> A. No, sir, not at all.

Lee also contends counsel should have objected to the following testimony from Guthrie (after earlier testimony regarding the presence of two bullets in the chamber of Lee's gun[8]):

> Q. Have you seen incidents with domestic violence where a gun is present where there is two bullets used?
>
> A. Yes.
>
> Q. Okay. And what -- how does that normally end up?
>
> A. In a murder.

---

[8] [STATE:] And did the -- was it significant to you at all for a domestic dispute to find two bullets?

[GUTHRIE:] Was it interesting?

[STATE:] Yes.

[GUTHRIE:] Yes. Yes, sir, absolutely.

Q. Murder/suicide sometimes?

A. Sometimes, yes, sir.

Q. And you were very up-front with [Emmons] about what could happen if she didn't get away. Correct?

A. Correct.

. . . .

Q. Did you have reason to be concerned?

A. Yes, sir.

Q. Okay. And are those based on things you know and have seen?

A. Yes, sir.

Lee argues that the testimony was irrelevant and unfairly prejudicial. We agree with the State that lay witnesses, such as Officer Guthrie, can offer opinion testimony, as well as testimony including "beliefs[] or inferences as long as they are drawn from his or her own experiences or observations." *Osborn v. State*, 92 S.W.3d 531, 535 (Tex. Crim. App. 2002); *see also* TEX. R. EVID. 701. Here, Officer Guthrie testified that, based on his observations and eight-and-a-half years of experience as a police officer who had responded to "hundreds" of domestic violence calls, it was his opinion that (1) Emmons may have lied about bruising, and (2) Lee could have intended a murder/suicide by placing only two bullets in his gun. This was permissible opinion testimony from a lay witness based on his observations, training, and experience. *See Osborn*, 92 S.W.3d at 535; *see also Reece v. State*, 878 S.W.2d

23

320, 325 (Tex. App.—Houston [1st Dist.] 1994, no pet.) (holding admissible officer's testimony that based on his experience, appellant, who he observed drinking beer in parking lot with twelve rocks of cocaine and $200 in small bills, was selling drugs). Because Officer Guthrie's testimony was admissible, trial counsel's failure to object was not ineffective assistance of counsel. *See Osborn*, 92 S.W.3d at 535.

We overrule Lee's fifth issue.

### 6. Cumulative Effect of Alleged Errors

In his sixth issue, Lee contends that the cumulative effect of the above alleged inactions by trial counsel constitutes ineffective assistance of counsel during the guilt-innocence phase of trial. Having concluded based on the record before us that Lee has failed to meet his burden to show that by any of the above complained actions alone, trial counsel's actions fell outside the bounds of reasonable representation, or that any of the complained-of actions actually prejudiced Lee's defense, we likewise conclude that the cumulative effect of such actions does not rise to the level of ineffective assistance of counsel. *See Chamberlain v. State*, 998 S.W.2d 230, 238 (Tex. Crim. App. 1999) (acknowledging that non-errors may not, in their cumulative effect, amount to error); *Straight v. State*, 515 S.W.3d 553, 576 (Tex. App.—Houston [14th Dist.] 2017, pet. ref'd) (concluding that cumulative effect of trial counsel's actions did not amount to ineffective assistance because trial

counsel did not render ineffective assistance of counsel in complained-of actions); *see also Aguilar v. State*, No. 01-15-00972-CR, 2017 WL 3634248, at *19 (Tex. App.—Houston [1st Dist.] Aug. 24, 2017, pet. ref'd) (mem. op., not designated for publication) (same).

## C. Alleged Ineffective Assistance During Punishment Phase

Lee's remaining three issues concern allegations of ineffective assistance during the punishment phase of trial. We address each of these in turn below.

### 1. Failure to Object to Testimony Concerning Other Victim

In his seventh issue, Lee argues that he received ineffective assistance of counsel during the punishment proceedings because counsel did not object to the following testimony from Emmons:

Q.   Since this time have you had contact with other ex-girlfriends?

A.   Yes.

Q.   Who?

A.   Her name is Megan Freeman.

Q.   And why?

A.   Because he did the same thing to her.

We do not have the benefit of any information in the record explaining trial counsel's decision not to object to this testimony. As the State argues, it is possible that counsel did not want to draw further attention to this alleged extraneous offense

by asserting an objection. *See Heigelmann v. State*, 362 S.W.3d 763, 768 (Tex. App.—Texarkana 2012, pet. ref'd); *see also Smith v. State*, No. 01-18-00331-CR, 2020 WL 1942456, at *6 n.2 (Tex. App.—Houston [1st Dist.] Apr. 23, 2020, no pet.) (mem. op., not designated for publication) ("Texas courts have consistently held a decision not to object to extraneous-offense evidence can be a legitimate trial strategy, for reasons ranging from not wanting to draw the jury's attention to the evidence to not wanting the jurors to believe that the defendant is trying to hide information from them." (internal quotations omitted)). Regardless, any error in failing to object was harmless, in light of the following later testimony from Lee's father:

Q.    Do you know a Megan Freeman?

A.    No.

. . .

Q.    Were you aware that she wrote an affidavit saying that [Lee] pulled a gun on her in June of 2020?

A.    No.

Lee does not complain about this subsequent line of questioning on appeal, which provided more information concerning Freeman's allegations than Emmons's testimony. Though Lee disagrees, we point out that, without his father's testimony, Emmons's testimony that Lee "did the same thing" to Freeman was vague as to what

26

exactly Lee purportedly did to Freeman, or to what Emmons was referring. Considering this, as well as the absence of any explanation of trial counsel's strategy, we decline to hold that trial counsel rendered ineffective assistance by failing to object to Emmons's testimony during sentencing. *See Braughton*, 749 S.W.2d at 532; *Toney*, 1996 WL 183411, at *6.

Lee contends that counsel's failure to object is akin to the conduct of trial counsel in *Dryer v. State*, 674 S.W.3d 635 (Tex. App.—Houston [1st Dist.] 2023, pet. ref'd), a case where this court recently found ineffective assistance of counsel despite the appellate record's silence as to trial counsel's strategy. In *Dryer*, a jury convicted the appellant of continuous sexual abuse of a child. *Id.* at 638. At trial, the jury heard testimony from a friend of the complainant, who testified that during a sleepover, the appellant touched her upper thigh when she was "about 16". *Id.* at 639. The trial court conducted a pretrial hearing as to the admissibility of the friend's testimony, wherein the State argued the testimony was admissible under article 38.37 of the Texas Code of Criminal Procedure on the basis that the touching of the friend was a sex act committed against another child. *Id.* The State contended that the testimony was "extremely important" because it corroborated the child complainant's allegations of abuse. *Id.* Defense counsel raised an objection to the admission of the testimony, though the basis of the objection was unclear. *Id.* Ultimately, the trial court ruled that the testimony was admissible. *Id.* at 640.

27

On appeal, the appellant argued that his trial counsel was deficient in failing to object to the testimony as inadmissible under Texas Code of Criminal Procedure article 38.37, because that provision only allows for the admission of certain sex-related offenses against children, and the witness was not a child at the time the alleged conduct occurred (rather, she was seventeen). *Id.* at 646. The appellant categorized the testimony as "damning evidence from a second accuser in what otherwise would have been a trial that boiled down to Dryer's word versus [the complainant's]." *Id.* This court agreed, concluding that counsel's failure to object to the testimony's admission met both prongs of *Strickland*. *Id.* at 650–51.

First, we determined that "no competent lawyer would have failed to make this objection because the inadmissibility of [the friend's] testimony [was] plain on the face of the record and no reasonable counsel could have decided that the defense would be better served by its admission than its exclusion." *Id.* at 648. Particularly, the friend stated her date of birth at the beginning of her recorded interview, which trial counsel received more than three years before the pretrial hearing concerning the admission of the testimony. *Id.* at 650. Further, on the video, the detective acknowledged that the friend was "technically an adult" at the time of the extraneous offense. *Id.* Thus, trial counsel was either aware or should have been aware before trial of the friend's age and recognized the inadmissibility of her testimony. *Id.*

Second, concerning prejudice to the appellant, we concluded that defense counsel's failure to object under article 38.37 was "both egregious and had a seriously deleterious impact on counsel's representation." *Id.* at 651. Essentially, the testimony transformed the case from a "he said, she said," to "a contest in which Dryer faced two separate accusers." *Id.* The testimony played a crucial role at trial, and the subject of the extraneous offense was referenced by at least six other witnesses throughout trial; "the sleepover ultimately occupied at least as much time at trial as [the complainant's] allegations of sexual abuse." *Id.* Ultimately, we held that counsel's failure to object "undermine[d] our confidence in the trial's outcome," because the outcome essentially depended on the jury's evaluation of the credibility of the appellant and the complainant, and the complainant's testimony was significantly corroborated by her friend's account of a similar experience. *Id.* at 652. We also noted that because the sleepover incident "pervaded the trial from start to finish," counsel's error impacted his representation as a whole significantly. *Id.*

We disagree with Lee's attempts to analogize the instant testimony that Lee "did the same thing" to a former girlfriend to the damning testimony in *Dryer*. First, the testimony concerning Freeman only came in during the punishment phase of Lee's proceedings; thus, our discussion in *Dryer* about the impact of extraneous offense evidence on a determination of guilt is inapplicable here. *See id.* (noting that this type of evidence "encourages the jury to convict based on bad character instead

of proof of the specific crime charged"). Here, the jury found sufficient evidence to convict without ever hearing about Freeman. Further, we again note that the testimony complained of was not altogether clear as to what transpired with Freeman and did not come from Freeman herself; in contrast, the friend's testimony in *Dryer* was described as "demonstrably emotional," and the State argued that her emotion was a sign of her truthfulness. *See id.* Those indicia are not present here.

Based on the foregoing, and in light of the lack of any explanation as to trial counsel's strategy, we overrule Lee's seventh issue.

### 2. Failure to Object to Improper Argument Concerning Parole

In his eighth issue, Lee alleges that he received ineffective assistance from trial counsel during the punishment phase when counsel did not object to the following statement from the prosecutor during closing arguments:

> It's 3(g), which means that he has been found guilty of an offense involving a deadly weapon, which means any time assessed will be served at half time before good conduct time is counted. So if you were to assess him a time in prison he has to serve at least half before they calculate good conduct and then they calculate it for him to be eligible for parole.

Lee contends that with the foregoing statement, the State "was allowed to highlight the possibility of parole for the jury, and remind the jury that they should double whatever sentence they thought was proper." In response, the State contends that the prosecutor's statement tracks the statutorily required language outlined in

Texas Code of Criminal Procedure article 37.07, section 4(a). That section outlines

the following jury instruction:

> Under the law applicable in this case, if the defendant is sentenced to a term of imprisonment, the defendant will not become eligible for parole until the actual time served equals one-half of the sentenced imposed or 30 years, whichever is less. If the defendant is sentenced to a term of less than four years, the defendant must serve at least two years before the defendant is eligible for parole. Eligibility for parole does not guarantee that parole will be granted.

> It cannot accurately be predicted how the parole law might be applied to this defendant if sentenced to a term of imprisonment, because the application of that law will depend on decisions made by parole authorities.

> You may consider the existence of parole law. You are not to consider the manner in which the parole law may be applied to this particular defendant.

TEX. CODE CRIM. PROC. art. 37.07, § 4(a). The court's charge to the jury in

this case essentially mirrored the statutory language. We agree with the State that

counsel's failure to object to the prosecutor's statements concerning parole was not

erroneous. As the Court of Criminal Appeals has observed, "it [is] not improper for

the prosecutor to accurately restate the law given in the jury charge." *Taylor v. State*,

233 S.W.3d 356, 359 (Tex. Crim. App. 2007). Further, in the context of parole law

specifically, the *Taylor* court determined that the following statements by the

prosecutor were not improper:

> A 40-year sentence means the defendant becomes eligible for parole after serving 20 years.
> . . . .

31

> A 60-year sentence means he becomes eligible after serving 30 years.
> A sentence of life or 75 still means he becomes eligible after 30 years.

*Id.* at 358–59. The court concluded that "the prosecutor did not convey any information beyond what was properly contained in the charge when he explained how the parole eligibility rules set out in the charge worked with forty, sixty and seventy-five year sentences." *Id.* at 359. Rather, the prosecutor's statements "simply ensured that the jury understood the language set out in the instructions." *Id.* The court also concluded that the prosecutor's use of the words "defendant" and "he" in his argument was not problematic, because the statute itself uses those words when describing the rules of parole eligibility. *Id.*

Though the prosecutor in this case referred to "he" and "him" when discussing parole, he did nothing more than summarize the court's charge to the jury. Because "[n]othing in this case indicates that the prosecutor's explanations went beyond an attempt to clarify the meaning of the jury instructions," trial counsel did not render ineffective assistance in failing to object to the prosecutor's statements. *See id.*; *see also Johnson v. State*, 987 S.W.2d 79, 84 (Tex. App.—Houston [14th Dist.] 1998, pet. ref'd) ("An attorney's failure to object to proper argument cannot be ineffective assistance.").

We overrule Lee's eighth issue.

### 3. Cumulative Effect of Alleged Errors

As in his sixth issue, Lee's ninth issue concerns the cumulative effect of the alleged errors made by trial counsel during the punishment phase. We again conclude that because Lee cannot meet his burden to demonstrate that any of the complained-of actions, standing alone, fell outside the bounds of reasonable representation, or that he suffered the requisite prejudice as a result, the cumulative effect of such actions likewise does not rise to the level of ineffective assistance of counsel. *See Chamberlain*, 998 S.W.2d at 238; *Straight*, 515 S.W.3d at 576; *Aguilar*, 2017 WL 3634248, at *19.

### Conclusion

Regardless of whether Lee visited Emmons's home in April 2020 or was issued a no-trespass warrant thereafter,[9] the sole question before the jury during Lee's trial was whether Lee committed an aggravated assault with a deadly weapon against Emmons on July 6, 2020. In addition to the numerous reasons outlined above as to why the complained-of conduct of trial counsel was either not erroneous or not prejudicial, we also determine that any error in admitting the subject evidence or testimony was harmless, in light of the entire record. Again, the jury heard testimony from Emmons specifically describing the assault, including the time and place it

---

[9] Several of Lee's complaints on appeal concern counsel's failure to object to the admission of evidence or testimony concerning these ancillary issues.

occurred and how Lee held the gun to her head. *See* TEX. PENAL CODE §§ 22.01, 22.02(b); *see also Green*, 465 S.W.3d at 382–83; *Padilla*, 254 S.W.3d at 590; *Lee*, 239 S.W.3d at 878. Therefore, Lee has failed to establish the requisite prejudice to his defense as required by the second prong of the *Strickland* analysis. *See* 466 U.S. at 687.

Having overruled each of Lee's nine issues, we affirm the judgment of the trial court.

Amparo Monique Guerra
Justice

Panel consists of Justices Kelly, Hightower, and Guerra.

Do not publish. TEX. R. APP. P. 47.2(b).